## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ———————————————————— : | |
| CHRISTINE HILL, LISA SCHEMES, LATASHA : | |
| TAYLOR, RONNIE HEIMBACH, JR., VANESSA : | |
| HEIMBACH, WENDY BAEZ, FRANCIS P. : | |
| ANUSKY, MICHAEL BETHUNE, RENITA : | |
| BETHUNE, PAUL LYSEIGHT, JOANN : | |
| LYSEIGHT and CAROLYN GALLICK, : | |
| individually and on behalf of all others similarly : | **Civil Action** |
| situated, : | **No. 12-CV-02770-BMS** |
| : | |
| *Plaintiffs*, : | |
| v. : | |
| : | |
| FLAGSTAR BANK, FSB, FLAGSTAR : | |
| REINSURANCE COMPANY, GENWORTH : | |
| MORTGAGE INSURNACE CORP., REPUBLIC : | |
| MORTGAGE INSURNACE CO., MORTGAGE : | |
| GUARANTY INSURANCE CORP., and : | |
| RADIAN GUARANTY INC. : | |
| : | |
| *Defendants.* : | |
| ————————————————————: | |

---

## MEMORANDUM OF LAW OF
## DEFENDANT REPUBLIC MORTGAGE INSURANCE COMPANY
## IN SUPPORT OF ITS MOTION TO DISMISS

---

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................... 1

SUMMARY OF RMIC'S POSITION.........................................................................4

ARGUMENT ............................................................................................................ 5

I.    Plaintiffs Lack Standing to Bring Claims Against RMIC............................ 6

      A.    Plaintiffs Fail to Plead that RMIC Caused their Purported "Injuries" .......... 7

      B.    Plaintiffs Fail to Identify any "Injury" That Could Give Them Standing to
            Sue RMIC. ................................................................................................. 9

            1.    The Filed Rate Doctrine Bars Plaintiffs' Economic Theory of Injury . 9

            2.    RESPA's Plain Terms Bar Plaintiffs' Statutory Theory of Injury .... 12

II.   Plaintiffs' Attempt to Bring a RESPA Claim Against RMIC Fails Because There
      Can Be No Secondary Liability Under RESPA ......................................... 14

III.  Plaintiffs' Claims are Barred by RESPA's Limitations Period, and Equitable
      Tolling Does not Apply ............................................................................ 16

      A.    Plaintiffs Have Failed to Demonstrate Any Fraudulent Concealment on the
            Part of RMIC............................................................................................. 18

      B.    Plaintiffs Do Not Allege That They Exercised Any Diligence, Much Less
            Reasonable Diligence, Throughout the Limitations Period ........................... 21

      C.    Plaintiffs Do Not Allege Any Other Basis to Support "Equitable Tolling"... 24

IV.   Plaintiffs' Purported Unjust Enrichment Claim Should Be Dismissed Along With
      Their RESPA Claims ................................................................................ 25

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adderly v. Ferrier*,
No. 07-507, 2010 WL 2640596 (W.D. Pa. June 2, 2010)……………………………....…21

*Alston v. Countrywide Financial Corp.*,
585 F.3d 753 (3d Cir. 2009)...............................................................................................12

*Andrew v. Ivanhoe Financial Inc.*,
No. 07-729, 2008 U.S. Dist. LEXIS 73023 (E.D. Pa. May 30, 2008)...................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................5

*Barlee v. First Horizon National Corp.*,
No. 2:12-CV-03045, 2013 WL 706091 (E.D. Pa. Feb. 27, 2013)...……………...3, 6, 8, 16, 25

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................5, 10

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994).....................................................................................................14, 15

*Cetel v. Kirwan Fin. Grp., Inc.*,
460 F.3d 494 (3d Cir. 2006)………………………………………………………....…17

*Cipollone v. University of Pennsylvania*,
No. Civ. A. 97-6565, 1998 U.S. Dist. LEXIS 1153 (E.D. Pa. Feb. 3, 1998).........................15

*Deutsche Bank Nat'l Trust Co. v. Lacapria*,
No. 08-2174, 2010 U.S. Dist. LEXIS 17998 (D.N.J. Mar. 1, 2010)........................................22

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
135 F.3d 837 (2d Cir. 1998)...............................................................................................15

*Fields v. Colgate Palmolive Co.*,
No. 10-365, 2010 U.S. Dist. LEXIS 133022 (D.N.J. Dec. 15, 2010)......................................5

*Forbes v. Eagleson*,
228 F.3d 471 (3d Cir. 2000)…………………………………………………….…………21

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ..........................................................................................15

*Garczynski v. Countrywide Home Loans, Inc.*,
656 F. Supp. 2d 505 (E.D. Pa. 2009) ................................................................................19

*Hall v. Hodgkins,*
    305 F. App'x 224 (5th Cir. 2008)……………………………………….…….6

*Hansen v. Shearson/Am. Exp., Inc.,*
    890 F. Supp. 416 (E.D. Pa. 1995)……………………………………..…..17

*Hedges v. Musco,*
    204 F.3d 109 (3d Cir. 2000)……………………………………………………25

*Hedges v. United States,*
    404 F.3d 744 (3d Cir. 2005)…………………………………………..…….24

*Hovenkotter v. Safeco Corp.,*
    No. C09-218JLR, 2009 U.S. Dist. LEXIS 129596 (W.D. Wash. Aug. 3, 2009).....................7

*In re Glenfed, Inc. Sec. Litig.,*
    60 F.3d 591 (9th Cir. 1995) ...........................................................................15

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
    802 F. Supp. 2d 1070 (N.D. Cal. 2011)……………………………….…….25

*In re NAHC, Inc.,*
    No. Civ. A. 00-4020, 2001 WL 1241007 (E.D. Pa. Oct. 17, 2001)…………………………..…..6

*In re N.J. Title Ins. Litig.,*
    683 F.3d 451 (3d Cir. 2012)...............................................................10, 11, n.6

*In re Processed Egg Prods. Antitrust Litig.,*
    MDL No. 2002, 2012 WL 5980001 (E.D. Pa. Nov. 30, 2011)………………………………21

*In re Processed Egg Prods. Antitrust Litig.,*
    MDL No. 2002, 2012 WL 6645533 (E.D. Pa. Dec. 20, 2012)…………………….…...17

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
    678 F.3d 235 (3d Cir. 2012)...........................................................................5

*In re Syntex Corp. Sec. Litig.,*
    855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd* 95 F. 3d 922 (9th Cir. 1996) ...............................15

*Inst'l Investors Grp. v. Avaya, Inc.,*
    564 F.3d 242 (3d Cir. 2009)………………………………………….…….17

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
    626 F.3d 1327 (11th Cir. 2010)…………………………………..….…….8

*Jones v. Wolpoff & Abramson, L.L.P.,*
    No. Civ. A. 05-57754, 2006 U.S. Dist. LEXIS 4031 (E.D. Pa. Feb. 1, 2006)..........................5

*Kamara v. Columbia Home Loans, LLC*,
654 F. Supp. 2d 259 (E.D. Pa. 2009) ...........................................................................16

*Knuth v. Erie-Crawford Dairy Cooperative Assoc.*,
463 F.2d 470 (3d Cir. 1972)..........................................................................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)……………………………………………………………………………………...6-7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)……………………………………………………………………….…8-9

*McCarn v. HSBC USA, Inc.*,
No. 1:12-CV-00375-LJO-SKO, 2012 U.S. Dist. LEXIS 74085 (E.D. Cal. May 25, 2012)…...
..…………………………………………………………………………………….…6, 8, 20

*McCarn v. HSBC USA, Inc.*,
No. 1:12-CV-00375-LJO-SKO, 2012 U.S. Dist. LEXIS 162257 (E.D. Cal. Nov. 13, 2012)..………………………………………………………………3, 6, 16, 19-22, 24

*McCray v. Fid. Nat'l Title Ins. Co.*,
682 F.3d 229 (3d Cir. 2012)..................................................................................... 10-11

*Mest v. Cabot Corp.*,
449 F.3d 502 (3d Cir. 2006)..........................................................................................20

*Mose v. United States Health Care Sys. of Pa. Inc.*,
No. Civ. A. 95-6553, 1996 U.S. Dist. LEXIS 9913 (E.D. Pa. July 9, 1996)...........................15

*Mull v. Alliance Mortgage Banking Corp.*,
219 F. Supp. 2d 895 (W.D. Tenn. 2002) ........................................................................6

*Mullinax v. Radian Guar. Inc.*,
199 F. Supp. 2d 311 (M.D.N.C. 2002) .....................................................................16, 20

*Mullinax v. Radian Guar., Inc.*,
311 F. Supp. 2d 474 (M.D.N.C. 2004) .........................................................................18

*Paschal v. Univ. of Pittsburgh Sch. Of Dental Med.*,
No. 10-502, 2010 U.S. Dist. LEXIS 123634 (W.D. Pa. Nov. 22, 2010)…………....….…5, 16

*Pedraza v. United Guar. Corp.*,
114 F. Supp. 2d 1347 (S.D. Ga. 2000) ....................................................................n.3, 18

*Poskin v. T.D. Banknorth, N.A.*,
687 F. Supp. 2d 530 (W.D. Pa. 2009)……………………………………………………..21

*Reid v. Baker*,
No. 10-2413-STA, 2011 U.S. Dist. LEXIS 27255 (W.D. Tenn. Mar. 16, 2011), aff'd, No. 11-5473, 2012 U.S. App. LEXIS 18987 (6th Cir. 2012)…………………………………..……23

*Robinson v. Johnson*,
313 F.3d 128 (3d Cir. 2002)…………………………………………………………………16

*Sands v. McCormick*,
502 F.3d 263 (3d Cir. 2007)………………………………………………………………..…6

*Snow v. First American Title Ins. Co.*,
332 F.3d 356 (5th Cir. 2003) ..............................................................................................16

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999).................................................................................................25

*Steedley v. McBride*,
446 F. App'x 424 (3d Cir. 2011)……………………………………………………………..6

*Stevens v. Union Planters Corp.*,
No. 00-CV-1695, 2000 U.S. Dist. LEXIS 22630 (E.D. Pa. Aug. 20, 2000) ..........................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)…………………………………………………………………………..6

*TV Communications Network, Inc. v. Turner Network Television, Inc.*,
964 F.2d 1022 (10th Cir. 1992) .............................................................................................9

*Wilson v. Kerestes*,
No. 3:12-CV-0884, 2012 WL 3626706 (M.D. Pa. June 12, 2012)………………….……….21

*Winer Family Trust v. Queen*,
503 F.3d 310 (3d Cir. 2007)…………………………………………………………………..6

STATUTES

12 U.S.C. § 2607(a), (b)....................................................................................... 2, 12-13

12 U.S.C. § 2607(d)(2) ..........................................................................................................13

12 U.S.C. § 2614...............................................................................................................4, 16

Defendant Republic Mortgage Insurance Company ("RMIC") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## BACKGROUND

Plaintiffs allege that they obtained home mortgage loans from defendant Flagstar Bank ("Flagstar") between May 2005 and March 2008, four to seven years before this action was filed. Am. Compl. ¶¶ 15-22.[2]  Because Plaintiffs made down payments toward the purchase of their respective homes of less than 20%, Flagstar purchased mortgage insurance for their loans to insure itself against the risk that if any of these borrowers defaulted, the net proceeds of the foreclosed collateral might not be sufficient to pay the full amount owed.[3]  Plaintiffs allege that

---

[1]     In addition, RMIC joins in the arguments in the motion to dismiss filed today by defendants Radian Guaranty, Inc., Mortgage Guaranty Insurance Corp., and Genworth Mortgage Insurance Corp.

[2]     Plaintiffs Christine Hill and Lisa Schemes allege that they obtained their mortgage loan in December 2005.  Am. Compl. ¶ 15.  Plaintiff LaTasha Taylor alleges that she obtained her mortgage loan in June 2007.  Am. Compl. ¶ 16.  Plaintiffs Ronnie and Vanessa Heimbach allege that they obtained their mortgage loan in May 2005.  Am. Compl. ¶ 17.  Plaintiff Wendy Baez alleges that she obtained her mortgage loan in June 2007.  Am. Compl. ¶ 18.  Plaintiff Francis Anusky alleges that he obtained his mortgage loan in June 2007.  Am. Compl. ¶ 19.  Plaintiffs Michael and Renita Bethune allege that they obtained their mortgage loan in March 2008.  Am. Compl. ¶ 20.  Plaintiffs Paul and JoAnn Lyseight allege that they obtained their mortgage loan in September 2007.  Am. Compl. ¶ 21.  Plaintiff Carolyn Gallick alleges that she obtained her mortgage loan in March 2008.  Am. Compl. ¶ 22.

[3]     One court has provided this apt description of mortgage insurance: "Mortgage insurance plays a vital role in the smooth functioning of this Nation's market in residential real estate by lowering the costs that potential homeowners pay for the credit necessary to purchase their homes.  Mortgage insurance is generally required whenever the amount of the loan exceeds 80% of the value of the home being acquired.  Mortgage insurance provides protection to the lender (or the ultimate owner of the loan) in the event of default.  Because mortgage insurance protects lenders from the risk of default in these highly-leveraged transactions, they can extend credit to purchasers who otherwise would not qualify for credit.  Furthermore, because mortgage insurance reduces the losses which lenders face in the event of a shortfall in the proceeds
...*Continued*

Flagstar purchased mortgage insurance for Plaintiffs Hill, Schemes, Baez, and Gallick from Defendant Radian Guaranty, Inc. ("Radian"), that Flagstar purchased mortgage insurance for Plaintiffs Taylor, Heimbach, and Lyseight from Defendant Mortgage Guaranty Insurance Corp. ("MGIC"), and that Flagstar purchased mortgage insurance for Plaintiffs Anusky and Bethune from Defendant Genworth Mortgage Insurance Corp. ("Genworth," and together with Radian and MGIC, the "Insuring Defendants")  *See* Am. Compl. ¶¶ 16-22.

Plaintiffs also allege that Flagstar bought mortgage insurance on their respective loans from the Insuring Defendants in exchange for illegal agreements by the Insuring Defendants to purchase reinsurance coverage for these loans from Flagstar Reinsurance Company ("Flagstar RE"), which is a reinsurance company affiliated with Flagstar.  Am. Compl. ¶¶ 1-14.  Plaintiffs contend that this supposed exchange "harmed" them because it violated their "right to a real estate settlement free from unlawful kickbacks and unearned fees" under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(a) & (b).  Am. Compl. ¶ 176.  Critical to this motion, Plaintiffs do not allege that RMIC insured any of Plaintiffs' loans, that RMIC agreed to *re*insure any of Plaintiffs loans, or that RMIC paid a kickback to Flagstar RE in exchange for insuring any of Plaintiffs' loans.  Plaintiffs only allege that RMIC agreed to enter into a "virtually identical" reinsurance agreement with regard to *other* borrowers' loans as a part of an alleged "scheme."  Am. Compl. ¶¶ 76, 96.

The allegations in Plaintiffs' Amended Complaint are not novel.  Neither can they withstand the scrutiny required by Rule 12(b).  Indeed, Plaintiffs' allegations are substantively

---

*Continued from previous page*
generated by a foreclosure, they can offer cheaper terms of credit to those home purchasers whose down payment is less than 20% of the home's value."  *Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1349 (S.D. Ga. 2000).

the same as those in each of the nine other RESPA cases that Plaintiffs' counsel have filed in this and other districts.[4]   The mortgage insurer defendants in these cases, including RMIC, have moved to dismiss each case on identical grounds.   The first such motion to be resolved was granted in November 2012 in the Eastern District of California.   *McCarn v. HSBC USA, Inc.*, No. 1:12-CV-00375-LJO-SKO, 2012 U.S. Dist. LEXIS 162257 (E.D. Cal. Nov. 13, 2012).   Relevant to RMIC's instant motion, the *McCarn* court dismissed the plaintiff's claims with prejudice against those defendants similarly situated to RMIC here both on Rule 12(b)(1) grounds because the plaintiff failed to allege that any injury he suffered was fairly traceable to the non-insuring defendants and on Rule 12(b)(6) grounds because the plaintiff's claims were untimely under RESPA and the plaintiff had not pled facts sufficient to support equitable tolling.   *Id.*   Moreover, in *Barlee v. First Horizon National Corp.*, Judge Bartle dismissed the plaintiffs' claims against similarly situated non-insuring defendants – finding that the plaintiffs' "conclusory allegations that all the private insurers were part of one scheme" were insufficient to confer standing against the non-insuring defendants.   *Barlee v. First Horizon National Corp.*, No. 2:12-CV-03045, 2013 WL 706091, *3-4 (E.D. Pa. Feb. 27, 2013).   Plaintiffs, here, raise claims identical to those asserted and rejected in *Barlee*.   Accordingly, RMIC respectfully urges the Honorable District Judge to follow the reasoning of the *McCarn* and *Barlee* opinions and dismiss Plaintiffs' claims against RMIC.

---

[4]       The other cases are: *White v. PNC Financial Services Group, Inc*., 2:11-CV-07928 (E.D. Pa. filed Dec. 31, 2011); *Riddle v. Bank of America Corp*., 2:12-CV-01740 (E.D. Pa. filed April 5, 2012); *Barlee v. First Horizon National Corp*., 2:12-CV-03045 (E.D. Pa. filed May 31, 2012); *Menichino v. Citibank, N.A*., 2:12-CV-00058 (W.D. Pa. filed Jan. 13, 2012); *Manners v. Fifth Third Bank*, 2:12-CV-00442 (W.D. Pa. filed April 4, 2012); *Cunningham v. M&T Bank Corp.*, 1:12-CV-01238 (M.D. Pa. filed June 28, 2012); *Samp v. JP Morgan Chase Bank, N.A*., 5:11-CV-01950 (C.D. Cal. filed Dec. 9, 2011); *McCarn v. HSBC*, 1:12-CV-00375 (E.D. Cal. filed March 12, 2012); and *Orange v. Wachovia Bank, N.A*., 5:2012-CV-01683 (C.D. Cal. filed Oct. 3, 2012).

## SUMMARY OF RMIC'S POSITION

Plaintiffs' claims against RMIC should be dismissed for four reasons:

*First,* Plaintiffs lack standing to bring claims against RMIC.  Plaintiffs' "injuries," if they have any, could not have been caused by RMIC.  Plaintiffs' effort to evade this basic fact by alleging that RMIC and other mortgage insurers participated in a "scheme" to violate RESPA fails.  Moreover, Plaintiffs have not even articulated a legitimate theory regarding the nature of any "injury" caused by RMIC.  They offer two very different theories of injury, one economic and the other statutory, neither of which gives rise to standing to sue RMIC.

*Second,* Plaintiffs' claims against RMIC fail because, at bottom, Plaintiffs are attempting to impose *secondary* liability on RMIC for alleged violations of RESPA committed by the Insuring Defendants.  Plaintiffs' effort fails as a matter of law because RESPA does not allow for secondary liability, whether in the form of aiding and abetting or conspiracy liability.

*Third,* Plaintiffs' claims are barred by the statute of limitations.  The applicable statute of limitations is one year, *see* 12 U.S.C. § 2614, and it began to run on the date Plaintiffs' loans closed between May 2005 and March 2008, approximately four to seven years prior to the commencement of this action.  Plaintiffs assert that the statute of limitations should be tolled because the basis for their claims supposedly was "fraudulently concealed" by RMIC (and the other defendants) – an assertion that is refuted by Plaintiffs' own reliance on numerous public documents available years before this action was filed – yet Plaintiffs make absolutely no allegation that RMIC concealed anything from them. Further, Plaintiffs have not pled facts to show that they exercised diligence in pursuing their claims. Nor have they alleged any other basis to support equitable tolling.  Thus, Plaintiffs have failed to state a claim against RMIC upon which relief can be granted.

**Fourth,** Plaintiffs' "unjust enrichment" claim should be dismissed because it is entirely parasitic on Plaintiffs' RESPA claims and provides no independent basis for recovery once the RESPA claims are rejected.

**ARGUMENT**

A plaintiff cannot survive a motion to dismiss unless the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations "'merely consistent with' a defendant's liability" do not suffice. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012)("With respect to 12(b)(1) motions in particular, the plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." (citation, internal quotation marks, and alterations omitted)). This includes stating facts sufficient to show that the claims have been timely brought. *Paschal v. Univ. of Pittsburgh Sch. Of Dental Med.*, No. 10-502, 2010 U. S. Dist. LEXIS 123634, at *16 (W.D. Pa. Nov. 22, 2010).

In assessing the plausibility of Plaintiffs' claims, the Court "need not consider as true allegations proven false by Plaintiff[s'] own exhibits," *Jones v. Wolpoff & Abramson, L.L.P.*, No. Civ. A. 05-5774, 2006 U.S. Dist. LEXIS 4031, at *2 n.2 (E.D. Pa. Jan. 31, 2006), or allegations that are contrary to assertions in Plaintiffs' original complaint. *Fields v. Colgate Palmolive Co.*, No. 10-365, 2010 U.S. Dist. LEXIS 133022, at *14 (D.N.J. Dec. 15, 2010)("A plaintiff cannot set forth assertions in an amended complaint that contradict statements made in the plaintiff's original complaint."). Further, the Court is not limited to considering the contents of Plaintiffs'

complaint, but may also rely on matters of public record, such as papers in other litigation. *Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011); *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008); *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). In addition, the Court may take into account any matter of which it may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see In re NAHC, Inc.*, No. Civ. A. 00-4020, 2001 WL 1241007, *6 (E.D. Pa. Oct. 17, 2001).

## I.      Plaintiffs Lack Standing to Bring Claims Against RMIC.

As other cases have recently held, it is clear on the face of Plaintiffs' amended complaint that they cannot satisfy the "irreducible constitutional minimum of standing" as to RMIC. *McCarn v. HSBC USA, Inc.*, No. 1:12-CV-00375-LJO-SKO, 2012 U.S. Dist. LEXIS 74085 at *11-22 (E.D. Cal. May 25, 2012); *McCarn*, 2010 U.S. Dist. LEXIS 162257, at *17; *Barlee*, 2013 WL 706091, at *2-4.

To satisfy that constitutional minimum, Plaintiffs must plead that: (a) they have "suffered an injury in fact;" (b) there is "a causal connection between the injury and the conduct" of the Defendants; and (c) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  Moreover, Plaintiffs must plead these elements with respect to *each* Defendant in the case.  *See, e.g., Winer Family Trust v. Queen*, 503 F.3d 310, 326 (3d Cir. 2007)(stating "[a] potential class representative must demonstrate individual standing vis-as-vis [sic] the defendant; he cannot acquire such standing merely by virtue of bringing a class action"); *Mull v. Alliance Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 908 (W.D. Tenn. 2002) ("each named plaintiff must demonstrate that he satisfies the requirements of standing vis-à-vis each defendant").  Plaintiffs cannot do that here because they do not, and cannot, allege "a causal connection between [their purported] injury and the conduct" of RMIC.  *Lujan*, 504 U.S. at 560-

61.  Nor can they articulate any coherent theory of an "injury" that would give them standing to sue RMIC.

### A.      Plaintiffs Fail to Plead that RMIC Caused their Purported "Injuries."

Nowhere in Plaintiffs' Amended Complaint do they plead facts showing that RMIC caused their alleged injuries.  RMIC did not insure any of Plaintiffs' loans.  Moreover, RMIC did not agree to *re*insure any of Plaintiffs' loans with Flagstar RE.  By definition, then, RMIC could not have violated Plaintiffs' alleged "right to a real estate settlement free from unlawful kickbacks and unearned fees."  Am. Compl. ¶ 176.  Plaintiffs allege that Flagstar referred their loans to the Insuring Defendants for mortgage insurance — not to RMIC — supposedly in exchange for an agreement by the Insuring Defendants to purchase reinsurance coverage for Plaintiffs' loans from Flagstar's affiliate, Flagstar RE.  Nothing in plaintiffs' complaint "link[s] [their] injury with any action taken by" RMIC.  *Hovenkotter v. Safeco Corp.*, No. C09-218JLR, 2009 U.S. Dist. LEXIS 129596, at *11 (W.D. Wash. Aug. 3, 2009).  Thus, nothing could give them standing to sue RMIC.

Plaintiffs attempt to escape this conclusion by asserting that RMIC participated in a "scheme" with Flagstar and the Insuring Defendants and that Plaintiffs were "harmed" by RMIC's alleged participation in the purported scheme.  Am. Compl. ¶¶ 174-176.  This theory cannot support their claims, however, because Plaintiffs have failed to describe any plausible collective scheme among RMIC, the Insuring Defendants, and Flagstar.  Instead, Plaintiffs' allegations suggest that rather than conspiring with one another mortgage insurers *competed* with one another for Flagstar's mortgage insurance business.  Thus, far from suggesting any "financial motivation to act in concert," Plaintiffs' own allegations make it far more "plausible that each [mortgage insurer] contracting with [Flagstar RE] would prefer that *fewer* of its competitors participate in the scheme, as it would then enjoy that much more of [Flagstar's]

steered business."  *McCarn*, 2012 U.S. Dist. LEXIS 74085 at *22[5] (emphasis added; internal quotation marks omitted); *Barlee*, 2013 WL 706091, at *3.

Conceding this, Plaintiffs' Amended Complaint makes the assertion that RMIC and the Insuring Defendants "agreed ***not*** to compete with each other" and instead collectively purchased referrals of borrowers on a "systematic, rotating basis" from Flagstar.  Am. Compl. ¶ 9, 73, 96 (emphasis added).  This allegation should be rejected because mortgage insurers would have no rational incentive to conspire in this way.  On Plaintiffs' allegations, the "scheme" required mortgage insurers to "share . . . [their] profits" with Flagstar, and to pay Flagstar RE far more in reinsurance premiums than it paid out in claims.  Am. Compl. ¶¶ 54, 72, 89, 92.  There is no plausible basis to suppose that mortgage insurers would *collectively* agree to a "scheme" that, on Plaintiffs' own characterization, they found so unpalatable.  To the contrary, a far more plausible explanation for why mortgage insurers would enter into reinsurance agreements that they did not like is that each mortgage insurer was seeking a *competitive advantage* over the other mortgage insurers.  In fact, the *McCarn* and *Barlee* cases found that it is "more rational that an insurer here would prefer that fewer of its competitors participated in the scheme, as it would then enjoy that much more of the steered business."  *Barlee*, 2013 WL 706091, *3; *McCarn*, 2012 U.S. Dist. LEXIS 74085, at *22.  There can be no "inference of conspiracy" when mortgage insurers "had no rational economic motive to conspire," and their actions are "consistent with other, equally plausible explanations" involving purely independent conduct.  *Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 1327, 1343 (11th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[5]     In this first *McCarn* opinion, the court granted a motion to dismiss with leave to re-file. The second, November 13, 2012, opinion (at 2012 U.S. Dist. LEXIS 16227) ultimately disposed of the claims against the same defendants after the plaintiff filed his amended complaint.

*Corp.*, 475 U.S. 574, 596-97 (1986)); *see also TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) (rejecting as "implausible" an alleged conspiracy the participants "would have no rational motive" to pursue).

Plaintiffs have failed to satisfy the basic constitutional prerequisite of standing with respect to RMIC and their claims against RMIC should be dismissed.

**B.    Plaintiffs Fail to Identify any "Injury" That Could Give Them Standing to Sue RMIC.**

As just shown, Plaintiffs lack standing to sue RMIC because they do not and cannot allege that RMIC caused their alleged injuries.  Plaintiffs also lack standing for the separate and independent reason that they have not identified any "injury" at all that could given them standing to sue RMIC.

Plaintiffs' Amended Complaint asserts two completely different theories of their supposed "injury."  On the one hand, they say that they suffered a putative *economic* injury because the "*aggregate* effect" of the "scheme" was to "unnecessarily inflate" the price of mortgage insurance, since the price "necessarily and wrongly included . . . payments unlawfully kicked back to" Flagstar.  Am. Compl. ¶ 179-180.  On the other hand, they assert that this purported economic injury is "not necessary" to their claim because they suffered a purely *statutory* injury:  Congress supposedly "bestowed upon" them "a right to a real estate settlement free from unlawful kickbacks and unearned fees," which Defendants allegedly violated.  Am. Compl. ¶ 176.  Neither the former alleged economic injury nor the latter alleged statutory injury can give Plaintiffs standing to sue RMIC.

**1.    The Filed Rate Doctrine Bars Plaintiffs' Economic Theory of Injury.**

Plaintiffs' conclusory allegation that the mortgage insurance premiums for their loans were "artificially inflated," Am. Compl. ¶ 179, is insufficient both because Plaintiffs have failed

to plead any factual basis for that erroneous conclusion and because it makes no legal or logical sense in light of the manner in which mortgage insurance rates are regulated by the states.

**First,** Plaintiffs' unsupported assertion that the mortgage insurance premiums for their loans were "inflated" to cover the cost of "kickbacks" cannot give them standing to bring claims against RMIC.  Any "kickback" purportedly built into the price of the mortgage insurance for Plaintiffs' loans could only be a "kickback" paid by an Insuring Defendant that insured *their* loans, not RMIC.  There is nothing in the Amended Complaint to suggest that the mortgage insurance premiums for Plaintiffs' loans could somehow be inflated to cover "kickbacks" paid by *other* mortgage insurers.  Such an allegation would make no sense "when viewed in light of common economic experience," *Twombly*, 550 U.S. at 565, because there is no economic reason (or none that Plaintiffs allege) why the premiums charged by one mortgage insurer should include "kickback" costs supposedly borne by a completely different mortgage insurer.  Thus, even if Plaintiffs could allege that the mortgage insurance premiums for their loans were "inflated," nothing in their complaint shows that this supposed injury could have been caused by RMIC.

**Second,** Plaintiffs' assertion that the mortgage insurance premiums for their loans were "inflated" is flatly contradicted by the filed rate doctrine, under which any claim that premium rates are excessive is "barred as a matter of law when the rate is declared reasonable by an independent entity."  *Stevens v. Union Planters Corp.*, No. CVA 00-CV-1695, 2000 U.S. Dist. LEXIS 22630, at *5 (E.D. Pa. Aug. 20, 2000); *see also McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229 (3d Cir. 2012); *In re N.J. Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012).  Plaintiffs attempt to confuse this issue by claiming that they "do not challenge the specific insurance rates

they paid for their individual private mortgage insurance policies," Am. Compl. ¶ 76, but Plaintiffs' factual allegations suggest otherwise.

In *McCray*, appellants brought claims against numerous Delaware title insurance companies, alleging, just like Plaintiffs here, that the defendants' title insurance rates were excessive because they included "costs unrelated to the issuance of title insurance," such as "kickbacks and other financial inducements title insurers provide to title agents." *McCray*, 682 F.3d at 234-35. The plaintiffs argued that their claims were not barred by the filed rate doctrine because the insurance rates had not been subject to "meaningful review" by the applicable state agency. *Id.* at 236-38. The Third Circuit rejected this argument, holding that the applicability of the doctrine does not depend on the particular steps that each state takes to approve or disapprove a challenged rate. *Id.* at 238; *see also id.* at 239-41. Instead, the filed rate doctrine "applies as long as the agency has in fact authorized the challenged rate." *Id.* at 238.[6]

Nowhere in their Amended Complaint do Plaintiffs allege that the mortgage insurance premiums for their loans were not properly approved in accordance with the applicable rate-filing regulations in their states. Nor do Plaintiffs allege that they have made any attempt to challenge these rates under the governing administrative procedures. As a matter of law, then, Plaintiffs cannot allege that the mortgage insurance premiums for their loans were "artificially inflated" or improperly included "kickbacks to lenders." Am. Compl. ¶ 107, 179; *McCray*, 682 F.3d at 241-42; *N.J. Title,* 683 F.3d at 459-60.

---

[6]     On the same day that the *McCray* decision was issued, the Court of Appeals followed its holding in rejecting another, similar challenge to title insurance rates in New Jersey in *In re N.J. Title Ins. Litig.*, 683 F.3d 451 (3d Cir. 2012).

This result is not altered by *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009).  In *Alston,* the Third Circuit declined to apply the filed rate doctrine because the plaintiffs there "d[id] not challenge directly the reasonableness or fairness" of their mortgage insurance premiums, but "challenge[d] only the commission of conduct proscribed by statute."  *Alston*, 585 F.3d at 764.  Here, by contrast, Plaintiffs expressly predicate their standing theory on an assertion that the aggregate effect of the "scheme" produced "inflated" mortgage insurance premiums.  That assertion triggers the filed rate doctrine and bars Plaintiffs' attempt to sue RMIC.

### 2.     RESPA's Plain Terms Bar Plaintiffs' Statutory Theory of Injury.

Plaintiffs' alternative theory of injury is that "Congress bestowed upon" them "a right to a real estate settlement free from unlawful kickbacks and unearned fees," which Flagstar, the Insuring Defendants, and RMIC allegedly violated when the Insuring Defendants purchased reinsurance from Flagstar RE allegedly in exchange for Flagstar's referral of Plaintiffs' loans to the Insuring Defendants.  Am. Compl. ¶ 2, 9, 75, 76, 109, 176.  This alleged statutory injury cannot give Plaintiffs standing to sue RMIC under RESPA's plain terms.

Section 2607 of RESPA prohibits two types of activity, which can be described in the simplest terms as (a) kickbacks and (b) split charges.  The prohibition against kickbacks states:

> No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a).  The prohibition against split charges states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

Clearly, Plaintiffs do not have standing to sue RMIC under Section 2607(a).  RMIC never provided *any* settlement service "involving" Plaintiffs' mortgage loans.  Nor could RMIC have ever reached an "agreement or understanding" with Flagstar that any business involving *Plaintiffs'* loans would be referred to RMIC or to anyone else.  Nor could RMIC have "give[n]," or Flagstar "accept[ed]," any "fee, kickback or thing of value" pursuant to such a non-existent agreement.

Similarly, Plaintiffs do not have standing to sue RMIC under Section 2607(b).  RMIC never received any "charge" "in connection with a transaction" "involving" Plaintiffs' loans.  Hence, RMIC could not have "give[n]," nor Flagstar "accept[ed]," a "portion, split, or percentage" of any such charge.

These conclusions are reinforced by Section 2607's remedial provision, the relevant portion of which states:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for *the settlement service involved in the violation* in an amount equal to three times the amount of any charge paid for such settlement service.

12 U.S.C. § 2607(d)(2) (emphasis added).

On its face, this provision cannot give Plaintiffs any right of recovery against RMIC.  RMIC never "charged" Plaintiffs, or Flagstar, for a "settlement service involved in [any alleged] violation" relating to Plaintiffs or their loans.  Instead, RMIC is only alleged to have "charged" Flagstar for "settlement services involved in [alleged] violations" relating to *other* borrowers' loans.  To the extent RMIC could have violated RESPA, the "settlement service involved in the violation" would *not* be a settlement service relating to Plaintiffs' loans, but to the loans of those *other* borrowers.  For Plaintiffs to have a RESPA claim against RMIC, then, Plaintiffs would

have to read Section 2607(d)(2) as entitling them to recover "three times the amount" of mortgage insurance charged for *other* borrowers' loans, which makes no sense at all.

Thus, RESPA on its face does not give Plaintiffs standing to sue RMIC.

## II.    Plaintiffs' Attempt to Bring a RESPA Claim Against RMIC Fails Because There Can Be No Secondary Liability Under RESPA.

As seen, the plain terms of RESPA preclude any claim by Plaintiffs that RMIC could have violated their alleged "right to a real estate settlement free from unlawful kickbacks and unearned fees." Am. Compl. ¶ 176. Thus, if they have any RESPA claim against RMIC at all, it could only be a claim that RMIC is in some way *secondarily* liable for the alleged RESPA violations that they say Flagstar and the Insuring Defendants committed with respect to their loans. In other words, Plaintiffs' claim against RMIC would have to be that it either conspired with Flagstar and the Insuring Defendants in the commission of these alleged violations, or aided and abetted them. Such a claim of secondary liability against RMIC fails as a matter of law because RESPA simply does not provide for such liability.

As the Supreme Court has explained:

> Congress has not enacted a general civil aiding and abetting statute . . . . Thus, when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.
>
> Congress instead has taken a statute-by-statute approach to civil aiding and abetting liability.

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) (citation omitted).

The Supreme Court held in *Central Bank of Denver* that a private plaintiff could not bring a claim for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act because, the Court reasoned, if "Congress intended to impose aiding and abetting liability," then

"it would have used the words 'aid' and 'abet' in the statutory text." *Central Bank of Denver*, 511 U.S. at 177.  That analysis applies no less to conspiracy liability.  Thus, where a federal statute "is silent as to conspiracy liability," there can be no "private cause of action for such conduct." *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1098 (N.D. Cal. 1994), *aff'd* 95 F. 3d 922 (9th Cir. 1996); *In re Glenfed, Inc. Sec. Litig.*, 60 F.3d 591, 592 (9th Cir. 1995) (rejecting conspiracy liability under *Central Bank of Denver*); *see also Mose v. United States Health Care Sys. of Pa. Inc.*, No. Civ. A. 95-6553, 1996 U.S. Dist. LEXIS 9913, at \*5-\*6 (E.D. Pa. July 9, 1996) (finding "no indication of any statutory basis for" conspiracy liability under ERISA where "ERISA itself contains no explicit cause of action for civil conspiracy"); *Cipollone v. University of Pennsylvania*, No. Civ. A. 97-6565, 1998 U.S. Dist. LEXIS 1153, at \*4 (E.D. Pa. Feb. 3, 1998) (same).

Like Section 10(b), RESPA contains no hint of any provision for secondary liability. Congress did not "use[] the words 'aid' and 'abet' in the statutory text," *Central Bank of Denver*, 511 U.S. at 177, and the text is equally "silent as to conspiracy liability," *Syntex*, 855 F. Supp. at 1098.  Thus, "[b]ecause there is no language in [RESPA] suggesting secondary liability," there is no basis to "read implicitly into [its] statutory provisions claims for conspiracy or aiding and abetting," which is precisely what Plaintiffs here seek to do.  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005, 1009 (9th Cir. 2006); *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 843 (2d Cir. 1998).

In short, secondary liability under RESPA simply does not exist.  The Court should dismiss Plaintiffs' claims against RMIC for this reason as well.

**III.    Plaintiffs' Claims are Barred by RESPA's Limitations Period, and Equitable Tolling Does not Apply.**

In addition, Plaintiffs' RESPA claims should be dismissed because they waited too long to bring them.  "Pursuant to Rule of Civil Procedure 12(b)(6), a complaint may be dismissed on the basis of failing to state a claim upon which relief can be granted.  This includes failing to bring a claim within the applicable statute of limitations."  *Paschal*, 2010 U.S. Dist. LEXIS 123634, at *16 (citations omitted); *McCarn*, 2010 U.S. Dist. LEXIS 162257, at *17; *Robinson v. Johnson*, 313 F.3d 128, 135-37 (3d Cir. 2002).  That is the situation here.

In an action brought by private plaintiffs, RESPA provides a one-year statute of limitations from the date of the occurrence of the alleged RESPA violation.  *See* 12 U.S.C. § 2614.  The alleged violations here "occurred" on the dates Flagstar "initially obtained primary mortgage insurance" for Plaintiffs' loans, *i.e.*, "the date of the closing" of the loans.  *Mullinax*, 199 F. Supp. 2d 311, 325 (M.D.N.C. 2002); *Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003); *Barlee*, 2013 WL 706091, at *4; *McCarn*, 2012 U.S. Dist. LEXIS 162257, at *18; *Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009).  Thus, the statute of limitations for Hill and Schemes expired in December of 2006; the statute of limitations for Taylor expired in June 2008; the statute of limitations for the Heimbachs expired in May of 2006; the statute of limitations for Baez expired in June of 2008; the statute of limitations for Anusky expired in June of 2008; the statute of limitations for the Bethunes expired in March of 2009; the statute of limitations for the Lyseights expired in September of 2008; and the statute of limitations for Gallick expired in Mach of 2009.  Am. Compl. ¶¶ 15-22.

Plaintiffs seek to escape this conclusion by invoking the doctrine of equitable tolling through fraudulent concealment.  Am. Compl. ¶¶ 111-154.  The applicable law in the 3rd Circuit on this point has been clearly defined:

> To invoke equitable tolling through fraudulent concealment at the
> pleading state, a plaintiff must allege particularized facts sufficient
> to suggest '(1) that the defendant actively misled the plaintiff; (2)
> which prevented the plaintiff from recognizing the validity of her
> claim within the limitations period; and (3) where the plaintiff's
> ignorance is not attributable to her lack of reasonable due diligence
> in attempting to uncover the relevant facts.'

*In re Processed Egg Prods. Antitrust Litig.*, MDL No. 2002, 2012 WL 6645533, *2 (E.D. Pa.

Dec. 20, 2012)(quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006)).   A

plaintiff asserting fraudulent concealment must plead the circumstances with "the particularity

required by Federal Rule of Civil Procedure 9(b)."   *Hansen v. Shearson/Am. Exp., Inc.*, 890 F.

Supp. 416, 426 n.6 (E.D. Pa. 1995).   The "circumstances" required by Rule 9(b) are the "who,

what, when, where, and how" of the fraudulent activity.   *Inst'l Investors Grp. v. Avaya, Inc.*, 564

F.3d 242, 253 (3d Cir. 2009).   Under these established legal principles, Plaintiffs' effort to avoid

RESPA's time bar by invoking equitable tolling through fraudulent concealment fails for three

reasons.

      ***First***, Plaintiffs' fraudulent concealment theory fails because the Amended Complaint is

devoid of any factual allegation stated with the specificity required under Rule 9(b) (as opposed

to a self-serving conclusory argument) that RMIC "concealed" anything from Plaintiffs.

      ***Second,*** Plaintiffs' Amended Complaint is clear.   Plaintiffs exercised no diligence

whatsoever to "discover" their claims in the years between the time their loans closed and the

time they hired counsel.

      ***Third,*** to the extent Plaintiffs seek "equitable tolling" on some unidentified additional

basis, other than their failure to discover their claims or defendants' purported concealment, their

Amended Complaint fails to allege any extraordinary circumstance to justify such tolling in the

face of the mountain of public information they themselves cite and their own lack of effort to pursue their claims in the years following the closing of their loans.

> ### A.   Plaintiffs have failed to demonstrate any fraudulent concealment on the part of RMIC.

Plaintiffs' allegations of concealment fail because they do not plead that RMIC did anything to "conceal" Plaintiffs' claims from them, and they make no attempt to satisfy the requirements of Rule 9(b). *See, e.g. Pedraza v. United Guar. Corp.*, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000) (plaintiff must identify "specific conduct of the defendant that entitles the plaintiff to toll the statute against *that* defendant" (emphasis in original)); *Andrew v. Ivanhoe Fin., Inc.*, No. 07-729, 2008 U.S. Dist. LEXIS 42860, at *14 (E.D. Pa. May 30, 2008) ("Allegations of fraudulent concealment tolling the statute of limitations must meet the requirements of Federal Rule of Civil Procedure 9(b)."). Plaintiffs were required to specifically plead "how, when, and in what manner" RMIC "conceal[ed] [the] alleged kickback scheme." *Mullinax v. Radian Guar. Inc.*, 311 F. Supp. 2d 474, 488 (M.D.N.C. 2004). The Amended Complaint is devoid of any such allegations.

Rather than allege any affirmative acts taken by RMIC to conceal Plaintiffs' claims, Plaintiffs rely on the purposefully vague allegation that "[a]ll Defendants also participated in a scheme to conceal from Plaintiffs Defendants' collective violations of RESPA's anti-kickback provision." Am. Compl. ¶ 112. Such allegation does not satisfy the requirements of Rule 9(b). Plaintiffs then claim in a futile effort to avoid the statute of limitations that unidentified "Defendants" "engaged in numerous affirmative acts and made false and/or misleading representations about the captive reinsurance arrangements" to Plaintiffs. Am. Compl. ¶ 114. Yet, Plaintiffs do not once—in the 187 paragraphs of their Amended Complaint—allege a single affirmative act or a misrepresentation *by **RMIC*** that concealed the alleged "scheme." The

absence of such an allegation renders Plaintiffs' argument for equitable tolling based on fraudulent concealment as respects RMIC meritless.

Plaintiffs also assert—without any support whatsoever—that "when some industry analyst and ratings agencies questioned the captive reinsurance deals," unidentified "banks and insurers publicly maintained" that the transactions were legitimate.  Am. Compl. ¶ 140.  Again, this general allegation fails to allege that RMIC "maintained" anything about "the captive reinsurance deals."  *Id.*  Plaintiffs' assertion that unidentified "Defendants" provided "incomplete and/or inaccurate information to state regulators" is just as inadequate.  Am. Compl. ¶ 139.  This allegation is a verbatim copy from the *McCarn* First Amended Complaint that was dismissed. As in *McCarn*, "Plaintiff[s] fail[] to allege what 'conduct' [RMIC] concealed from the regulators, what disclosures [RMIC] made that were incomplete or inaccurate, or how these defective disclosures prevented Plaintiff[s] from obtaining information about [their] claim[s] in spite of exercising due diligence."  *McCarn*, 2012 U.S. Dist. LEXIS 162257 at *25.

Plaintiffs allege that their "claims are not claims for nondisclosure," yet they fail to allege any affirmative act by RMIC to "conceal" Plaintiffs' claims.  Am. Compl. ¶ 142.  The lack of specificity as to this allegation as to RMIC makes clear that Plaintiffs *do* rely solely on RMIC's silence or nondisclosure as the basis for their claim of equitable tolling as to RMIC.   It is well established that a plaintiff may not claim that a defendant "concealed" the plaintiff's claims simply through "mere silence or nondisclosure."  *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009) (internal quotation omitted); *see also Knuth v. Erie-Crawford Dairy Coop. Assoc.*, 463 F.2d 470, 481-82 (3d Cir. 1972) (denying equitable tolling; "mere silence or nondisclosure…is not enough") (citation omitted).   Mere nondisclosure by RMIC could toll the statute of limitations only if RMIC owed Plaintiffs a duty of disclosure.  *See*

*Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006) (denying equitable tolling; "[s]ilence can constitute fraud only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence.") (citation omitted). Plaintiffs have pleaded no facts to show that RMIC had any such duty to Plaintiffs. *See McCarn*, 2010 U.S. Dist. LEXIS 74085, at *22 n. 7 ("Plaintiff points to no applicable disclosure requirement."). Indeed, the only disclosure requirements that Plaintiffs suggest could be applicable are the disclosure requirements under RESPA. *See, e.g.*, Compl. ¶¶ 112-116. But "the disclosure requirements embodied in RESPA bind the lender and not [RMIC]," and therefore cannot provide a basis for tolling as to RMIC. *Mullinax*, 199 F. Supp. 2d at 330.

Plaintiffs' assertion that they could not have discovered their claims any earlier than they did is belied by their admissions that for many years before they allegedly "discovered" their claims, similarly-situated plaintiffs were "challenging *the same type of agreement or understanding as is alleged herein*." Am. Compl. ¶ 105 (quoting a prior RESPA case filed years before this case) (emphasis added). This admission confirms that "facts supporting [Plaintiffs'] claims" have not been hidden from them, but in fact have been readily available to similarly-situated plaintiffs for years. Because Plaintiffs' own allegations confirm that they "*should have been aware*" of the facts supporting their claims years ago, Plaintiffs are not entitled to have the statute of limitations equitably tolled.

In sum, as the *McCarn* court concluded when faced with a substantively identical suit and claim for equitable tolling through fraudulent concealment, Plaintiffs have "failed to meet [their] burden in order to toll the statute of limitations on the basis of fraudulent concealment." *McCarn*, 2012 U.S. Dist. LEXIS 162257, at *25-26. For the reasons set forth above, the RESPA claims against RMIC should be dismissed.

20

**B.**     **Plaintiffs do not allege that they exercised any diligence, much less reasonable diligence, throughout the limitations period.**

In order to benefit from equitable tolling of the statute of limitations, Plaintiffs were required to allege in their Amended Complaint that they used "reasonable diligence in uncovering the relevant facts that form the basis of [their] claim." *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 551 (W.D. Pa. 2009); *see Forbes v. Eagleson*, 228 F.3d 471, 486 (3d Cir. 2000) (a plaintiff must plead that she took "reasonable measures to uncover the existence of injury").   Just like in *McCarn*, Plaintiffs here "allege[] no facts showing the exercise of any diligence…over the course of [four to seven years] after the accrual of" their claims.  *McCarn*, 2012 U.S. Dist. LEXIS 162257 at *20.  The only acts of "diligence" that the Plaintiffs allegedly took were when they "fully and diligently participated in the loan process and reviewed the documents presented to [them]."   Am. Compl. ¶ 149.   In other words, they last exercised diligence at the closing of their loans.  This is simply not enough.  As a matter of law, Plaintiffs are not entitled to equitable tolling of the statute of limitations because they were required to exercise "due diligence in discovering their claim ***throughout the time period in which they claim the statute of limitations should be tolled***."  *In re Processed Egg Prods. Antitrust Litig.*, 2011 WL 5980001, at *13 (emphasis added); *see also Wilson v. Kerestes*, No. 3:12-CV-0884, 2012 WL 3626706, *7 (M.D. Pa. June 12, 2012) ("equitable tolling is permitted only if the party has exercised due diligence throughout the period it seeks to have tolled") (citing *Adderly v. Ferrier*, No. 07-507, 2010 WL 2640596, *4 (W.D. Pa. June 2, 2010)).  Accordingly, Plaintiffs' admissions that they signed their loan documents and then did nothing for years precludes application of the doctrine of equitable tolling to preserve their claims against RMIC.

Just like in *McCarn*, Plaintiffs allege that despite being notified in advance that the mortgage insurance on their loans might be reinsured with Flagstar RE, none of them attempted

21

to contact Flagstar until just before they filed their complaint in this action.[7]   As in *McCarn*, Plaintiffs "then attempt[] to get around [their] clear lack of diligence by arguing that…[they were] only able to discover the basis of [their] claim[s] with the assistance of counsel," *McCarn*, 2012 U.S. Dist. LEXIS 162257 at \*20-21; Compl. ¶ 153.  Plaintiffs cannot maintain that they needed "specialized knowledge and/or assistance of counsel" before they could bring their claims when nothing prevented them from seeking the advice of counsel earlier.  Am. Compl. ¶ 153; *Deutsche Bank Nat'l Trust Co. v. Lacapria*, No. 08-2174, 2010 U.S. Dist. LEXIS 17998, at \*18 (D.N.J. Mar. 1, 2010).  That Plaintiffs chose to wait until 2011 and 2012 to retain counsel, Compl. ¶ 127-133, does not shield them from the limitations bar.  On Plaintiffs' reasoning, "any plaintiff who [allegedly] requires the assistance of counsel to discover the existence of a claim, including plaintiffs who conduct virtually no diligence, would be automatically entitled to equitable tolling of the statute of limitations for an indefinite period of time until that plaintiff retains counsel."  *McCarn*, 2012 U.S. Dist. LEXIS 162257 at \*21-22.  There is no authority for Plaintiffs' argument, and the *McCarn* court has already rejected it.

---

[7] Plaintiffs say that Hill (and therefore Schemes) first contacted Flagstar on April 11, 2012, more than six years after their loan closed in December 2005, Am. Compl. ¶ 127; that Taylor first contacted Flagstar on May 8, 2012, nearly five years after her loan closed in June 2007, Compl. ¶ 128; that Heimbach first contacted Flagstar on May 10, 2012, nearly seven years after their loan closed in May 2005, Am. Compl. ¶ 129; that Baez first contacted Flagstar on November 20, 2012, more than five years after her loan closed in June 2007, Am. Compl. ¶ 130; that Anusky first contacted Flagstar on December 19, 2012, more than five years after his loan closed in June 2007, Am. Compl. ¶ 131; that Lyseight first contacted Flagstar on January 25, 2013, more than five years after their loan closed in September 2007, Am. Compl. ¶ 132; that Gallick first contacted Flagstar on September 12, 2012, more than four years after her loan closed in March 2008, Am. Compl. ¶ 133; and that Bethune first contacted Flagstar on November 16, 2012, more than four years after their loan closed in March 2008, Am. Compl. ¶ 126, n.13.

Even more telling of Plaintiffs' lack of a valid claim against RMIC and Plaintiffs' lack of diligence is that Plaintiffs do not allege that they *ever* had any contact with RMIC.  Instead, Plaintiffs' counsel recently contacted RMIC's counsel.  Plaintiffs also acknowledge that "counsel for [RMIC] indicated that [RMIC] did not insure any Plaintiff's loan," and Plaintiffs further implicitly acknowledge that RMIC has provided all of the information that Plaintiffs have requested. Am. Compl. n.3, n.14.  These admissions show a lack of diligence by Plaintiffs and a lack of concealment by RMIC.

Plaintiffs' argument also fails because the alleged facts and the putative legal analysis underlying their claims were publicly available when their loans closed, or at the very latest, more than one year before they filed their Complaint.  Plaintiffs' own allegations and exhibits show that the supposed facts and legal theories underlying their claims existed and were available much earlier than one year prior to the filing of the Complaint.  Under such circumstances, their claim for equitable tolling fails. *See, e.g., Reid v. Baker*, No. 10-2413-STA, 2011 U.S. Dist. LEXIS 27255, at *37 (W.D. Tenn. Mar. 16, 2011), *aff'd*, No. 11-5473,  2012 U.S. App. LEXIS 18987 (6th Cir. 2012) (dismissing plaintiff's claims as untimely because the claims were based on documents publicly available prior to the expiration of the statute of limitations).

Moreover, Plaintiffs rely on (i) public documents available as early as *2004* that allegedly show that mortgage insurers paid more to Flagstar RE in reinsurance premium payments than Flagstar RE paid in claims, Am. Compl. ¶ 89; (ii) an article dated March 23, 1998 that, according to Plaintiffs, explained that "many lenders created captive reinsurance subsidiaries" and "assume[d] a portion of the private mortgage insurer's risk with respect to a given pool of loans, Am. Compl. ¶ 54, Am. Compl. Ex. 3; and (iii) Freddie Mac's public announcement in *2008* that

"it would limit the percentage of premiums a mortgage insurance provider could cede to a captive reinsurer to 25%," which Plaintiffs say put the "brakes" on the alleged "scheme," Compl. ¶ 106, Am. Compl. Ex. 24.  Thus, Plaintiffs' own Amended Complaint refutes the notion that Plaintiffs exercised reasonable diligence with regard to the claims asserted against RMIC (or any other defendant), and Plaintiffs' Amended Complaint further refutes the notion that RMIC (or any other defendant) "concealed" anything from Plaintiffs.

In sum, Plaintiffs' allegations are insufficient to support their claim that the statute of limitations should be equitably tolled as to their claims against RMIC based on fraudulent concealment.  Plaintiffs have not alleged that RMIC "concealed" Plaintiffs' claims in any way, and Plaintiffs did not exercise diligence in discovering their claims throughout the time period in which they claim the statute of limitations should be tolled.    Without tolling, Plaintiffs' claims are time-barred and should be dismissed.

### C.      Plaintiffs do not allege any other basis to support "equitable tolling."

To the extent Plaintiffs seek to invoke some basis for "equitable tolling" other than their failure to discover their claims or RMIC's supposed fraudulent concealment, they allege nothing in their Amended Complaint to support such treatment.  The Third Circuit has made clear that "[e]quitable tolling is an extraordinary remedy which should be extended only sparingly." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005).  Plaintiffs are entitled to no "extraordinary" relief here.  As in *McCarn*, they "fail[] to mention what 'extraordinary circumstance' prevented [them] from obtaining assistance from counsel earlier, or how not retaining counsel earlier constitutes an 'extraordinary circumstance' that prevented [them] from filing [their] claim within the limitations period."  *McCarn*, 2012 U.S. Dist. LEXIS 162257, at *21.  Nor is there any other extraordinary circumstance disclosed in their pleadings to justify tolling on any purported "equitable" ground.

Thus, the Court should dismiss Plaintiffs' RESPA claims as time barred.

## IV.   Plaintiffs' Purported Unjust Enrichment Claim Should Be Dismissed Along With Their RESPA Claims.

Finally, the Court should dismiss Plaintiffs' "unjust enrichment" claim. To establish that claim, Plaintiffs must show that RMIC either wrongfully secured or passively received a benefit that would be unconscionable for it to retain without compensating the provider. *Barlee*, 2013 WL 706091, at *6 (citations omitted). The elements of unjust enrichment are: benefits conferred on the defendant by the plaintiff; appreciation of such benefits by the defendant; and, acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefits without payment of value. *Id.* Here, Plaintiffs have not pled facts sufficient to establish a claim of unjust enrichment.  To the contrary, their Amended Complaint establishes that RMIC did not receive any benefit from Plaintiffs, directly or indirectly, as RMIC did not provide mortgage insurance on any of their loans. On its face, Plaintiffs' unjust enrichment claim is entirely based on plaintiffs' RESPA claims, and provides no independent basis for recovery once the RESPA claims are rejected.  *See, e.g., In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims"); *cf. Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999)(rejecting unjust enrichment claim once underlying tort claims had been dismissed). Moreover, there is no basis to retain jurisdiction over a pendent state-law claim once the federal claim has been dismissed. *Hedges v. Musco*, 204 F.3d 109, 113 (3d Cir. 2000).

## CONCLUSION

For all of the reasons set forth above, RMIC respectfully urges the Court to grant their motion to dismiss without leave to amend.

Respectfully submitted,

Dated: March 27, 2013          KAUFMAN, COREN & RESS, P.C.

/s/ Steven M. Coren
Steven M. Coren
Bruce Bodner
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone: 215-735-8700
Facsimile: 215-735-5170
Email: scoren@kcr-law.com

William L. Kirkman
Bourland & Kirkman, LLP
201 Main Street, Suite 1400
Fort Worth, Texas 76102
Telephone: 817-336-2800, ext. 122
Facsimile: 817-877-1863
Email: billk@bourlandkirkman.com

Attorneys for Defendant
REPUBLIC MORTGAGE INSURANCE CO.

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2013, the foregoing Motion to Dismiss and accompanying Memorandum of Law were filed electronically and served on counsel of record via the Court's CM/ECF Filing System.  In addition, true and correct copies of the Motion to Dismiss and Memorandum of Law were sent to the following recipients by first class mail, postage prepaid:

> Edward W. Ciolko
> Joseph H. Meltzer
> Amanda R. Trask
> Donna Siegel Moffa
> Joshua C. Schumacher
> Terence S. Ziegler
> KESSLER TOPAX MELTZER & CHECK, LLP
> 280 King of Prussia Road
> Radnor, PA 19087
> Telephone: 610-667-7706
> Fax: 610-667-7056


> */s/ Steven M. Coren*
> Steven M. Coren