IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE HILL, individually and on behalf of all others similarly situated,  Plaintiffs, | : : : : | CIVIL ACTION |
| v. | : : | |
| FLAGSTAR BANK, et al.,  Defendants. | : : | No. 12-2770 |

MEMORANDUM

**Schiller, J.**                                                                                                          June 26, 2014

      Francis Anusky and Renita Bethune, individually and on behalf of a putative class, claim that their mortgage lender, Flagstar Bank, and private mortgage insurance companies were part of a scam involving kickbacks and unearned fees in violation of the Real Estate Settlement Procedures Act ("RESPA"). Defendants claim that Plaintiffs failed to bring their claims within RESPA's statute of limitations. Plaintiffs seek to invoke the doctrine of equitable tolling to save their claims. Previously, the Court denied Defendants' motion to dismiss and ordered the parties to conduct limited discovery on the statute of limitations and equitable tolling issues. That discovery is complete, and Defendants have moved for summary judgment. The Court grants Defendants' motions for summary judgment.

**I.     BACKGROUND**

    **A.     Facts**

      Flagstar Bank is a federally-chartered stock savings bank and is the principal subsidiary of Flagstar Bancorp, Inc. (Am. Compl. ¶ 23.) Flagstar Reinsurance Company is also a wholly-owned subsidiary of Flagstar Bancorp., Inc. and is Flagstar Bank's captive reinsurance affiliate. (*Id*. ¶¶ 1, 30.) Genworth Mortgage Insurance Corporation ("Genworth") is a private mortgage insurer charged

here with ceding premiums to Flagstar Reinsurance Company and participating in the alleged kickback scheme. (Am. Compl. ¶¶ 25, 31.) Anusky obtained a mortgage loan from Flagstar Bank to purchase his home in Delaware and was required to make monthly private mortgage insurance payments. (*Id*. ¶ 19.) Michael and Renita Bethune obtained a mortgage loan from Flagstar Bank to the purchase their home in Georgia. (*Id*. ¶¶ 20.) Genworth acted as the private mortgage insurer selected by Flagstar Bank for Anusky and the Bethune's loans. (*Id*. ¶¶ 19-20.)

Home buyers who do not make a twenty percent down payment on their homes typically must buy private mortgage insurance. (*Id*. ¶¶ 3, 46.) This private mortgage insurance protects lenders if the borrower defaults. (*Id*.) The borrower typically pays for the private mortgage insurance, either through monthly premiums added to the mortgage payment or through a higher interest rate on the loan. (*Id*. ¶ 48.) The terms and conditions of private mortgage insurance are set by the lender and the provider of the insurance. (*Id*. ¶ 49.)

According to Plaintiffs, Flagstar Bank and its affiliated mortgage reinsurer, Flagstar Reinsurance Company, colluded with various private mortgage insurers such as Genworth in violation of RESPA, which prohibits lenders from accepting kickbacks or referral fees from any person who provides a real estate settlement service or accepting any portion of a settlement service fee, other than for services actually performed. (*Id*. ¶¶ 2, 9-10.) In particular, Plaintiffs claim that Flagstar Bank referred its borrowers to private mortgage insurers, such as Genworth, who agreed to reinsure with the lender's captive insurer, Flagstar Reinsurance Company. (*Id*. ¶¶ 73-76.) In return, Genworth ceded a percentage of the borrower's premiums to the lender's captive reinsurer to ensure a steady stream of business. (*Id*. ¶¶ 73, 76) These contracts were structured so that the reinsurer received hundreds of millions of dollars in premiums but assumed little or no actual risk. (*Id*. ¶¶ 77,

89, 93.) The premiums were placed into a trust, but the agreements "were designed to limit Flagstar Reinsurance Company's liability or payment responsibilities . . . through provisions that permit Flagstar Reinsurance Company to effectively opt out of the contracts at will by simply failing to adequately capitalize the trust supporting any reinsurance contract." (*Id*. ¶ 83.) Furthermore, once the trust was depleted, the private mortgage insurers assumed any remaining obligations and the captive reinsurer was off the hook. (*See id*. ¶ 85.) The scheme therefore failed to constitute a real, risk-transferring reinsurance agreement between Flagstar Reinsurance Company and the private mortgage insurers. (*Id*. ¶¶ 125, 131.)

Additionally, Plaintiffs contend that they and other borrowers overpaid for mortgage insurance because the price included the kickbacks to lenders. (*Id*. ¶¶ 111, 147 ("These arrangements tend to keep premiums for private mortgage insurance artificially inflated over time because a percentage of borrowers' premiums are not actually being paid to cover actual risk, but are simply funding illegal kickbacks to lenders.").)

**B.    Procedural Background**

This case was originally filed on May 18, 2012, and included the following named Plaintiffs: Christine Hill, Lisa Schemes, LaTasha Taylor, Ronnie Heimbach, Jr., Vanessa Heimbach, Michael Bethune, Renita Bethune, Paul Lyseight, Francis Anusky, Carolyn Gallick, Wendy Baez, and JoAnn Lyseight. Currently, the remaining named Plaintiffs are Anusky and Renita Bethune. An Amended Complaint was filed on January 28, 2013.

On November 18, 2013, this Court granted summary judgment as to similar claims brought by a putative class of homeowners against Bank of America, Bank of America Reinsurance Corporation, United Guaranty Residential Mortgage Insurance Company and Genworth Mortgage

Insurance Corporation. In that case, Thomas Riddle and Marilyn Fischer, individually and on behalf of a putative class, claimed that their mortgage lender, Bank of America, and private mortgage insurance companies were part of a scam involving kickbacks and unearned fees in violation of RESPA. The *Riddle* case was filed shortly before this case. The defendants in *Riddle* sought to dismiss the plaintiffs' claims, arguing that the statute of limitations had run. After the Court permitted discovery on the statute of limitations issue, the Court granted the defendants' motions for summary judgment and dismissed the plaintiffs' claims as time-barred. The Court concluded that the plaintiffs' lack of diligence in pursuing their claims foreclosed a finding that the plaintiffs were entitled to equitable tolling.

Similarly, Defendants here sought to dismiss Plaintiffs' claims as time-barred. Noting that *Riddle* was "a nearly identical matter," the Court denied the motions to dismiss so that the parties could create a record on the issue of the statute of limitations. Defendants then filed summary judgment motions, and Plaintiffs responded to Defendants' arguments.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides

evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III. DISCUSSION

#### A. RESPA Statute of Limitations and Equitable Tolling

Plaintiffs' RESPA claims have a one-year statute of limitations. *See* 12 U.S.C. § 2614. The RESPA statute of limitations runs "from the date of the occurrence of the violation," which commences upon the closing of the loan. *See Marple v. Countrywide Fin. Corp.*, Civ. A. No. 07-4402, 2008 U.S. Dist. LEXIS 37705, at *6 (D.N.J. May 7, 2008); *Smith v. EquiCredit Corp.*, Civ. A. No. 01-4326, 2002 WL 32349873, at *3 (E.D. Pa. Oct. 4, 2002).

Plaintiffs commenced this litigation well after RESPA's one-year statute of limitations expired. However, they argue that they are entitled to proceed with their claims based on the doctrine of equitable tolling. Equitable tolling stops the statute of limitations from running although the claim's accrual date, the date on which the statute of limitations begins to run, has already passed. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994); *see also Forbes v. Eagleson*, 228 F.3d 471, 486 (3d Cir. 2000) (noting that doctrine of equitable tolling presumes claim has already accrued). Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the

existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).

Equitable tolling is appropriate if: (1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Oshiver*, 38 F.3d at 1387. The burden of demonstrating that equitable tolling is appropriate lies with the party seeking to assert it. *See Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006). Plaintiffs argue that Defendants actively misled them regarding the nature and existence of their claims. For a statute of limitations to be tolled due to a defendant's fraudulent concealment, the plaintiff must show that: (1) the defendant actively misled the plaintiff respecting the plaintiff's claim; (2) the defendant prevented the plaintiff from recognizing the validity of the claim within the limitations period; and (3) the plaintiff used reasonable diligence in uncovering the relevant facts that form the basis of a claim. *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006); *Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 551 (W.D. Pa. 2009). In RESPA cases, silence is insufficient to toll the statute of limitations; the defendant must have performed an independent act of concealment upon which the plaintiff justifiably relied. *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 516 (E.D. Pa. 2009).

Generally, when a plaintiff seeks to invoke the doctrine of equitable tolling, and defendants seek summary judgment on the issue, a court must determine: (1) whether there is sufficient evidence to support a finding that defendants engaged in affirmative acts of concealment designed to mislead the plaintiffs regarding facts supporting their claim; (2) whether there is sufficient evidence to support a finding that plaintiffs exercised reasonable diligence; and (3) whether there is sufficient evidence to support a finding that plaintiffs were not aware, nor should they have been aware, of the

facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint. Absent evidence to support these findings there is no genuine dispute of material fact on the issue and the defendants are entitled to summary judgment. *Forbes*, 228 F.3d at 487.

### B. Diligence

Regardless of the basis for Plaintiffs' plea for equitable tolling, "a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009); *see also Oshiver*, 38 F.3d at 1390 (noting that equitable tolling "requires a level of diligence on the part of the plaintiff; that is, [it] requires the plaintiff to take reasonable measures to uncover the existence of injury"). Reasonable diligence means that a plaintiff pursued the cause of his injury "with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006). Moreover, "Plaintiffs were required to be diligent throughout the time period in which they claim the statute of limitations should be tolled." *White v. PNC Fin. Servs. Grp., Inc.*, Civ. A. No. 11-7928, 2013 WL 3090823, at *7 (E.D. Pa. June 20, 2013) The Court has afforded Plaintiffs ample opportunity to make their case for equitable tolling. The record is now clear that Plaintiffs did not diligently pursue their claims. Rather, they elected to pursue litigation after they were pursued by lawyers who believed that they may have claims. This lack of diligence is fatal to Plaintiffs' claims.

#### 1. *Anusky*

Anusky claims that he attempted to discover his claims on the following four dates: June 29,

2007, during the closing of his loan; November 15, 2012; December 19, 2012; and January 24, 2013. (Flagstar Defs.' Mot. for Summ. J. Ex. 1 [Anusky Dep.] at 174; Genworth's Mot. for Summ. J. Ex. B [Pl. Francis Anusky's Objs. & Resps. to Genworth's First Set of Inerrogs. Relating to the Statute of Limitations] at 6.) However, he could not recall what steps he took on December 19, 2012, and January 24, 2013, to discover his claims. (Anusky Dep. at 174-76.)

Anusky and his wife obtained a mortgage from Flagstar Bank in 2007 to purchase their home located at 1719 Shady Brook Road in Wilmington, Delaware. (*Id*. at 28-30, 32, 50.) At his deposition, Anusky testified that Flagstar Bank's loan documents disclosed that the loan for which he applied required mortgage insurance of approximately $130 per month. (*Id*. at 68-69.) He also received documents indicating that he obtained a mortgage loan that required private mortgage insurance, as well as documents that informed him that Genworth was his mortgage insurance company. (*Id*. at 91, 97, 101.) Despite possessing relevant information about his mortgage insurance, Anusky had minimal contact with Flagstar Bank and Genworth. Indeed, he could not recall contacting Flagstar Bank or Genworth about mortgage insurance prior to his loan closing. (*Id*. at 76.) Anusky mentioned that "[j]ust before 2012," he spoke with Cindy, a Flagstar Bank employee. (*Id*. at 57.) Additionally, prior to the loan closing, Anusky spoke Geoffrey, who may have worked for Flagstar Bank. (*Id*. at 58.) Geoffrey "came to the house with papers" on two occasions. (*Id*. at 59-62.) In 2009 or 2010, he called Flagstar Bank about how much "investment in the house" was required for him to cancel the private mortgage insurance. (*Id*. at 93.) He never contacted Genworth about cancelling his private mortgage insurance. (*Id*. at 95.)

Anusky reported that he was contacted—he believes around November 15, 2012—by letter from lawyers about his private mortgage insurance. (*Id*. at 123, 128.) It was only after that contact

did Anusky pursue his claims. For instance, Anusky had a conversation in November 2012 with a Flagstar employee about private mortgage reinsurance. (*Id*. at 147-48.) The Flagstar Bank employee did not know what Anusky was talking about. (*Id*. at 148-50.) At that time, Anusky was no longer paying mortgage insurance. (*Id*. at 150.) The Flagstar employee informed Anusky that Genworth was the mortgage insurer on the Flagstar loan; Anusky then proceeded contacted Genworth. (*Id*. at 152.) Anusky testified that the Genworth employee did not have information regarding the mortgage reinsurance program. (*Id*. at 153.) He also stated that the Genworth employee did not make any affirmative misrepresentations to Anusky. (*Id*. at 167-68.) That was his last attempt to contact either Flagstar or Genworth. (*Id*. at 154-55.)

        2.      *Renita Bethune*

Renita Bethune and her husband, Michael, purchased a home at 2525 Ashland Trace in Conyers, Georgia. (Genworth Mortg. Ins. Corp.'s Mot. for Summ. J. Ex. D [Renita Bethune Dep.] at 53.) Michael Bethune executed a power of attorney that allowed his wife to close on their property in Georgia because he could not attend the closing due to work obligations. (*Id*. at 75; *Id*. Ex. E [Michael Bethune Dep.] at 19.) Renita Bethune did not know the identity of her mortgage insurance, nor did she know if her mortgage insurance was reinsured. (Renita Bethune Dep. at 16.) Prior to speaking to her attorneys in 2012, Renita Bethune had never heard of the term "captive reinsurance" and had never heard of Flagstar Reinsurance Company or Genworth Mortgage Insurance Company. (*Id*. at 29-30.)

The loan that the Bethunes received from Flagstar Bank required mortgage insurance, a fact disclosed to the Bethunes. (*Id*. at 86-87, 99-100, 102, 112-13.) Additional documentation revealed that Genworth was the mortgage insurance provider on the loan. (*Id*. at 107-08, 113, 129.) Renita

9

Bethune attended the closing on her home on March 26, 2008. (*Id*. at 115-16, 124.) She understood at the closing that the loan included a mortgage insurance premium of $242.42. (*Id*. at 127.) At the closing, she received and signed, on her husband's behalf, a private mortgage insurance disclosure. (*Id*. at 134-37.)

Renita Bethune admitted that after her loan closed, she "didn't do anything to investigate" her claims in this matter. (*Id*. at 205.) Her husband also did nothing to investigate his claims. (*Id*. at 206.) Moreover, between the closing of the loan and her initial communication with her attorneys, she did not believe that Flagstar Bank made any misrepresentations to her. (*Id*. at 206-07.) According to Renita Bethune, at no point was she prevented from investigating her claims. (*Id*. at 208.)

The first contact she received from her attorneys was in early November 2012. (*Id*. at 234-35.) She had no contact with Genworth between the time of her closing and the time she retained counsel. (*Id*. at 240.) Bethune contends that she attempted to discover her claims on March 26, 2008; during the closing; November 16, 2012; December 7, 2012; December 18, 2012; and December 19, 2012. (*Id*. at 246-47.)

    3.    *Analysis*

Anusky concedes that from the date of his closing until he was contacted by lawyers on November 15, 2012, he did nothing to investigate his claims. (Anusky Dep. at 176.) This is consistent with his position that he did not discover his claims until he was contacted by lawyers in November 2012.[1] This undisputed fact that Anusky did nothing to investigate or pursue his claim

---

[1] The Class Action Complaint in this case was originally filed on May 18, 2012, before Anusky and Renita Bethune took any action to discover their claims. Anusky and Renita Bethune are listed as named plaintiffs in the First Amended Complaint, which was filed on January 28, 2013.

until prompted by lawyers leads this Court to conclude that he failed to exercise the reasonable diligence required to invoke the doctrine of equitable tolling. Renita Bethune stands in a position identical to Anusky's. She engaged in no investigation from the date of her closing until she was contacted by her lawyers, well after the statute of limitations had expired.

Facts similar to those that led the Court to conclude that the *Riddle* plaintiffs' claims were time-barred compel the identical conclusion here. Both cases involved claims that had accrued, a statute of limitations that had passed, and plaintiffs who failed to investigate their claims until they were contacted by lawyers well after the running of the statute of limitations. The Court recognizes that this is a harsh outcome. Plaintiffs, however, have been unable to explain to the Court how their position does not read the statute of limitations right out of RESPA. Under Plaintiffs' theory, although the actionable misrepresentations were disclosed during Plaintiffs' respective closings, the statute of limitations is open-ended until legal counsel put Plaintiffs on notice of their claims. The evidence is undisputed that Plaintiffs failed to perform any diligence during the statute of limitations period, and therefore, Plaintiffs are not entitled to equitable tolling of RESPA's statute of limitations.

### B. Misrepresentations

Plaintiffs' lack of diligence is sufficient for this Court to deny Plaintiffs' request for equitable tolling. Additionally, there is no genuine issue of material fact as to whether Genworth actively misled Plaintiffs because Genworth had no contact with them prior to the running of the statute of limitations.

The record is devoid of evidence that Genworth actively misled Plaintiffs. Indeed, the record lacks evidence that Renita Bethune had any contact with Genworth prior to December 2012. (Genworth's Mot. for Summ. J. Ex. A [Pl. Renita Bethune's Objs. & Resps. to Genworth's First Set

of Inerrogs. Relating to the Statute of Limitations] at 11.) Similarly, Anusky stated that he did not communicate with Genworth between the date of his closing and the date when he retained counsel. (Anusky Dep. at 165-66.) Indeed, Anusky did not contact Genworth about mortgage reinsurance until January 24, 2013. (Genworth's Mot. for Summ. J. Ex. B [Pl. Francis Anusky's Objs. & Resps. to Genworth's First Set of Inerrogs. Relating to the Statute of Limitations] at 11.) In the absence of a duty to speak, silence is insufficient to toll the statute of limitations in RESPA cases; the defendant must have performed an independent act of concealment upon which the plaintiff justifiably relied. *Garczynski*, 656 F. Supp. 2d at 516. Because Genworth did not communicate with Plaintiffs and had no duty to do so, Plaintiffs cannot demonstrate that Genworth actively misled him. *See Mest*, 449 F.3d at 517 ("Silence can constitute fraud only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence.").

Additionally, Plaintiffs cannot bootstrap their argument in support of equitable tolling against all Defendants. Rather, if they seek to toll the statute of limitations against Genworth, they must put forward an affirmative act of concealment by Genworth, rather than relying on statements made by other Defendants. *See White*, 2013 WL 3090823, at *2, *5; *see also In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 315 (D.N.J. 2004) ("To establish [equitable] tolling, the plaintiff must show: 1. an affirmative act of concealment by each defendant."). "[T]he plaintiff must show that alleged fraud or concealment is chargeable against each defendant whom the plaintiff argues should be estopped from asserting the statute of limitations." *Stroud v. Abington Mem. Hosp.*, Civ. A. No. 06-4840, 2008 WL 2061408, at *12 (E.D. Pa. May 13, 2008). This lack of misrepresentation by Genworth provides an additional basis to grant summary judgment in favor of Genworth.

## IV. CONCLUSION

Because Plaintiffs did not diligently pursue their claims against Defendants, they cannot benefit from equitable tolling. Their claims are time-barred. Additionally, Plaintiffs' failure to produce evidence of a misrepresentation by Genworth is fatal to their claims against Genworth. Although this case involves different plaintiffs and a number of different defendants, the identical legal issues presented discovery in *Riddle*, coupled with the factual similarities uncovered by the limited discovery in the two cases, convince the Court that the two cases present the same legal issues and must have the same outcomes. An Order consistent with this Memorandum will be docketed separately.